BLANCHARD, J.
This case is for the second time before the court. At the November term 1900 (see 104 La. 31, 28 South. 931), it was found necessary to reverse the judgment of the trial court, which had been in favor of the plaintiffs, and to remand the cause for further proceedings.
The reason for this action was error on part of the trial judge in excluding evidence on a certain line of inquiry, offered by defendants.
The case went back and the excluded evidence was received. But the trial judge arrived at the same conclusion as he had on the first trial, and awarded a judgment in favor of 'plaintiffs. Defendant appeals.
The suit is one upon open policies of insurance against fire, and the defense charges the plaintiffs with fraud and false swearing, particularizing under seven heads as follows, to-wit:
(1) By persistently and systematically attempting to cause, increase and inflate the loss suffered by them.
(2) By attempting, both before and after the fire, to conceal the origin and prevent the discovery of the fire.
(3) By obliterating and keeping from inspection books, papers, documents, records and facts necessary and material to prove their actual loss.
(4) By making, or causing to be made, false and fictitious entries in their books.
(5) By claiming in their proofs of loss excessive or total loss and damage on property not injured, or only slightly injured.
(6) By claiming large sums for damage to property admittedly worthless.
(7) By grossly overvaluing and overestimating the value of and loss to the property set forth in detail in the schedules annexed to the proofs of loss.
The testimony excluded on the first trial, which caused the remanding of the case, related to the second specification noted above —the one charging plaintiffs with attempting to conceal the origin and prevent the discovery of the fire.
The trial judge, at the close of the examination, announced from the bench that his understanding was the ease had been remanded to take testimony under certain allegations in the answer charging, in substance, that plaintiffs had burned the building, and that the evidence had been confined to that sole issue. He then declared that no testimony adduced had connected the plaintiffs with complicity in the destruction of the building by fire; that the charges were not sustained; and that he would enter up- the same judgment in the case as he had on the first trial.
The record of this cause consists of two enormous transcripts aggregating 1,458 pages of type-written matter, of which about 1,400 pages are devoted to the testimony of some 40-odd witnesses called to the stand. Besides the transcripts, numerous books, documents, exhibits, etc. were brought up in the original.
M. F. Dunn & Co., doing business as stationers, bookbinders and lithographers, procured insurance aggregating $50,500 in 23 different insurance companies.
This was taken out on stock of merchandise, fixtures, furniture, machinery, presses, lithographic stones and engravings, etc., represented to be of the total value of $67,300.
Defendant company issued 2 of the 23 policies, aggregating $3,500, covering pro rata the several items of property insured. The suit is to recover the company’s proportion of the loss sustained by the fire which occurred on October 22, 1898.
Following the fire plaintiffs presented *523 proofs of loss to the companies in which they claimed that the sound value of the property insured was $62,669.36 and the damage thereto was $48,465.25.
The policies of insurance contained a clause that in event of disagreement as to amount of loss sustained hy the insured, the same should be ascertained by competent appraisers, the assured and insurer each selecting one, and the two so chosen to select a competent umpire.
Under agreement, with reservation of all rights to both parties, an appraisement, under this clause, was had of the stock of merchandise on hand at the time of the fire, resulting in fixing its value at the sum of $14,-280.17 and damage thereto at $10,924.87.
Plaintiffs sought to have this appraisement extended to all the other property covered by the policies, but defendant and the other companies did not respond to this.
The four-story brick building in which plaintiffs did business was so badly damaged by the fire that the owners, in order to its repair or rebuilding, required removal of the remains of the stock, furniture, fixtures, machinery, presses, lithographic stones and engravings, etc. But this requirement was not immediately enforced, and, meanwhile, there was abundant opportunity to inspect and appraise everything just as it was left in the building by the fire.
That this was not done is, we think, attributable to the insurance companies. It is unfortunate that it was not done. It was then an easy matter to have, by appraisement, arrived at a fair approximate value of what remained of the plant of the establishment and thus have obviated the difficulty of ascertaining that value, and the damage sustained, after removal from the burned building.
Where the policy calls for appraisement, whereby the loss may be acted upon while yet recent, and the insurer declines to submit thereto, it is hardly in a position to complain of the doubt and uncertainty which subsequently arise and to which it contributed by the refusal of appraisement. Angamar v. Ins. Co., 10 La. Ann. 179.
Having declined appraisement on everything save the stock of merchandise, and concluding their examination touching the circumstances of the fire, the value of the property and 'the amount of the loss, the insurance companies — represented practically by the same adjuster — denied all liability. This was not until more than three months had elapsed from the date of the fire.
Issues of fact rather than of law are determinative of the case.
The trial judge found from the evidence that the total loss under all the policies was the sum of $46,503.98, and that defendants herein are liable for their proportion of this loss, and entered up judgment in favor of plaintiff's for $3,207.94, with legal interest from judicial demand.
Our study of the record has not led to the conclusion that this judgment is erroneous. He had the advantage of seeing and hearing the witnesses, always of great aid in arriving at the truth in cases where, like this one, much conflict of testimony exists. The decision of the judge of the first instance is generally allowed to prevail upon questions of fact, unless manifestly erroneous. Giesecke v. Finlay, 45 La. Ann. 408, 12 South. 502; Newman v. Baer, 50 La. Ann. 323, 23 South. 279; Bagnetto v. Bagnetto, 51 La. Ann. 1200, 25 South. 987.
It would subserve no useful purpose to go into an analysis of the evidence to support the determination arrived at.
The plaintiffs have substantially met the burden of proof, which was upon them to show the loss sustained. Making their case fairly certain, they are not to be defeated simply because there remains room for doubt, even reasonable doubt. A preponderance of evidence determines issues of fact in civil causes.
“In open policies,” said this court in Marchesseau v. Merchants’ Fire Ins. Co., 1 Rob. 442, “it would, in many if not in a majority of cases, be extremely difficult to prove the actual value of the goods lost. It is, therefore, sufficient to show by testimony, the great probability of the affidavit (of loss) being true.”
See, also, Wightman v. Western Marine & Fire Ins. Co., 8 Rob. 449; Wood on Fire Insurance (2d Ed.) sec. 528.
In Erman v. Mutual Ins. Co., 35 La. Ann. 1095, this court held:
“A discrepancy, even if it be material, between .the statements of, the assured under oath in his proof of loss, and those made at *525 the trial, does not constitute the false swearing that works a forfeiture of all claim under a policy of insurance; nor does an overstatement of the value of the property work such a forfeiture, for a great difference of opinion upon values xnay well co-exist with perfect honesty of all the persons differing. The assured may have sworn to what he believes to be true, but which nevertheless is false, and his policy would not thereby be forfeited. To work such forfeiture, the assured must knowingly and intentionally, and therefore fraudulently, have sworn with the intent to deceive the insurer and get from him a value falsely put upon the property.”
See, also, Baillie & Co. v. Western Assurance Co., 49 La. Ann. 659, 21 South. 736; Daul v. Firemans’ Ins. Co., 35 La. Ann. 98; Balestracci v. Firemans’ Ins. Co., 34 La. Ann. 844.
Judgment affirmed.